STATE OF FLORIDA, ex rel., S. A. LYNCH CORPORATION, a Delaware corporation and TRINITY EPISCOPAL CHURCH, a non-profit corporation under the laws of the State of Florida, v. R. G. DANNER, as City Manager of the City of Miami, Florida, a municipal corporation, and GEORGE N. SHAW, as Director of Finance of the City of Miami, Florida, a municipal corporation, and DANNY BROWN, trading and doing business as JEWELL BOX RESTAURANT.

33 So. (2nd) 45        June Term, 1947
December 19, 1947        En Banc

*Taylor & Burr,* for appellants.
*Robert C. Lane,* for appellee.

BARNS, J.:

This is a case wherein relator sought a peremptory writ of mandamus against the City to compel it, the City, to cancel a license issued by City to Danny Brown, authorizing him to sell intoxicating liquors on certain premises within the City.

An alternative writ was issued, and, upon answer being filed denying that the permit was wrongfully issued, evidence was taken and the respondents were discharged and cause dismissed. Thereupon the appeal was taken.

It is first observed that counsel for appellant in his brief has grouped his questions together and then proceeded to present his argument on each question severally.

Supreme Court Rule 20 prescribes that the argument addressed to the "question" should follow the statement of the

question. The purpose of this is to present the "question" and argument together, for convenience, and to avoid the necessity of stating the question more than once. The question need be stated once, but it should be with the argument addressed to it.

"Questions" are in the nature of argument, and somewhat secondary. "Questions" grow out of and are only created by the assignment of error and the said Rule 20 prescribes that:

*"Specific assignments of error* from which the questions arise should be stated, and, if any reference to the transcript is made, the page should be given."

It appears that Danny Brown, on November 11, 1946, was issued a license to sell intoxicating liquors on the certain described premises, but it has not been made to appear whether such premises are within or without the "Downtown Business Zone."

It also appears that prior to the issuance of the said license Brown made application to the "City Planning Board" requesting a *variance* on the property in question, so as to permit the use of the premises as a restaurant and cocktail lounge, and the said "Board," after a hearing pursuant to notice, passed a resolution recommending the granting of said "variance," but that on appeal to the City Commission by relators the recommendation was rejected by the City Commission.

It appears that respondent Brown procured two building permits. The permits were for alterations and additions to the existing building, and the first was issued in 1945 and the second in 1946; that the "variance" was requested after the first permit was issued and before the issuance of the second building permit.

The provisions of the ordinance relative to "variances" from the zoning regulations, like provisions relating to the function of the "Planning Board" and the effect of its recommendation, seem not to have been plead or proven.

Miami enacted Zoning Ordinance No. 1682, the property in question under No. 1682 came within a classification known as "R-4," which permitted hotels and apartment buildings wherein the tending of alcoholic beverages on the premises was not permitted according to the petition and alternative writ, but

the exact provisions as to "R-4" have not been placed before us.

Ordinance No. 1682 was amended by ordinance No. 2896, and the City was divided into two zones, one of which was named as "Downtown Business Zone" and the other as "Combination Residence and Business Zone." Said Ordinance No. 2896 regulated the issuance of "occupancy permits" for the consumption or sale of liquor in each of said zones and prohibited the issuance of any such "occupancy permit" within the "Downtown Business Zone":

" . . . if the place of business of said applicant is situated less than five hundred (500) feet from an established licensee; said five hundred (500) foot distance to be measured and computed from the front door of the established licensee to the front door of the proposed licensee, along the route of ordinary pedestrian traffic;"—and prohibited the issuance of an occupancy permit for the sale of liquor in the said "Residential and business Zone";

" . . . if the place of business of said applicant is situated less than two thousand five hundred (2,500) feet from an established licensee; said two thousand five hundred (2,500) foot distance to be measured and computed from the front door of the proposed licensee, along the route of ordinary pedestrian traffic."

And said Ordinance No. 2896 further provided that:

"The restrictions as to distance as hereinabove set forth, shall not be applicable to *bona fide* restaurants and dining rooms where the sale of liquor is entirely incidental to the principal use of selling food, and where no sign or display is made to the outside, indicating that alcoholic beverages are obtainable therein, and where such beverages are sold only to persons seated at tables where food is habitually sold and consumed, and where such restaurant has a space of at least four thousand (4,000) square feet occupied by and exclusively devoted to the use of seating customers at tables and where the chairs at such tables within said space number at least two hundred (200)."

And Article X of Ordiance No. 1682 it is provided:

"The lawful use existent at the time this Ordinance takes

effect (passed and adopted January 29, 1937) may be continued even though it does not conform with the provisions hereof. Any building existing at the time this ordinance takes effect may be altered or reconstructed providing such alteration does not cost to exceed its assessed valuation and providing also that it is not enlarged beyond ten per cent. of the size of such building on the effective date of this ordinance (November 18, 1936) unless changed to conforming use. Also providing all other regulations governing the new uses are compiled with."

This is referred to and known as the "non-conforming building and use" provision.

The foregoing section seems to relate to the *use* of premises when not conforming to the prescription of the ordinance and apparently also to *buildings* (independent of their use?) not conforming to such prescription.

*Zoning, generally.* Lawful zoning is the exercise of the police power and must be based upon and have substantial relation to either public health, safety, morals, comfort, convenience, or general welfare, and must not be unreasonably discriminatory.

Zoning regulations usually must relate to the nature of the structure or the nature of the use. The purpose of regulations in respect to the quality of a structure will likely be quite different from the purpose of regulations respecting its use. The public purpose to be served in each instance will likely be different.

A permit for the building of a structure would not of necessity be a permit determining the right to its use. Zoning problems usually relate to non-conforming use of a non-conforming building, or both.

*Non-conforming use of building.* A problem is created when an area is zoned and there is already within such area property being used in such a manner as not to conform to the zoning regulations. Usually such use is allowed to continue subject to certain conditions. This is done in an effort to secure a reasonable exercise of the police power for the interest of the community against the interest of private owner so as

not to interfere with existing conditions more than necessary for the public welfare.

*Variance.* Experience has established that often after an over-all zoning ordinance has been enacted, it develops that its application would result in practical difficulties and unnecessary hardships. To avoid this, such ordinances often provide for exceptions or departures from the general provisions, when such prescribed standards for a variance have been established before the proper board or commission. This is often referred to as "spot-zoning."

Relators predicate their right to relief upon three grounds, to-wit:

"(a) That the building was remodeled after the passage of ordinance No. 1682 and was enlarged more than 10% of its size. (See Art. X, Ord. No. 1682).

"(b) That the building was altered and reconstructed at a cost exceeding its assessed valuation. (ib).

"(c) That the sale of intoxicating beverages is not entirely incidental to the principal use of selling food on said premises, and said place of business does not have a space of at least four thousand (4,000) square feet occupied by and exclusively devoted to the use of seating customers at tables. (See ordinance No. 2896, amending Ordinance No. 1682)."

Grounds (a) and (b), supra, are predicated upon that part of Art. X of Ordinance No. 1682 reading:

"Any building existing at the time this ordinance takes effect may be altered or reconstructed providing such alteration does not cost to exceed its assessed valuation and providing also that it is not enlarged beyond ten per cent. of the size of such building on the effective date of this ordinance unless changed to conforming use."

It will be assumed that Ordinance No. 1682 was a general zoning ordinance of a two-fold aspect, *one* regulating the nature and quality of buildings to be built, and the other *regulating* the nature of the structure, independent of the use.

The appellants-relators do not complain and seek relief against respondents concerning the building having been constructed in violation of the zoning ordinance, and the general

880

rule relative to buildings built after permits have been erroneously issued and construction completed is as follows:

"Where a building department through mistake has issued a permit for non-conforming building, and construction has proceeded and no appeal to the board of appeals has been taken by neighbors, the permit will not be revoked."

"Zoning"—Bassett—p. 106.

It is the *use* of the building of which appellants complain.

Concerning ground (c), supra, the testimony is conflicting. the trial judge made no findings of fact. Much of the testimony related to grounds (a) and (b), supra. It has not been made to appear that grounds (a) and (b) are relevant to use, and relators' complaint only goes to use. Such testimony appears to have been irrelevant and immaterial.

When the entire record is considered it is apparent why the trial judge dismissed the cause. Relators' rights are not clear because the facts were not clearly presented so as to enable the judge to reach a definite conclusion respecting them.

It is our conclusion that because of the public interest involved and the uncertainty as to respondents' rights respecting the sale of intoxicating liquors on the premises that the cause should be affirmed and remanded, with instructions to dismiss same without prejudice.

It is so ordered.

TERRELL, CHAPMAN and BUFORD, JJ., concur.

SEBRING, J., agrees to conclusion and judgment.

THOMAS, C. J. dissents.

ADAMS, J., not participating.