C. FRANKLYN WHEELER and VARIAN JOHNETTE WHEELER, husband and wife, v. FRANK E. LAUTZ, CHARLES L. YUILLE, R. J. SCHNEIDER, M. H. DAWSON, J. NORMAN DRUCK, suing for their own use and for all persons likewise affected, and MIAMI SHORES VILLAGE, a Municipal Corporation.

36 So. (2nd) 915            June Term, 1948
July 30, 1948              En Banc
Rehearing denied October 12, 1948

*Smathers, Thompson, Maxwell & Dyer,* for appellants.

*Mitchell D. Price, Zaring, Florence & Barfield,* for appellees.

PER CURIAM:

Affirmed.

THOMAS, C. J., TERRELL, CHAPMAN, ADAMS, SEBRING and HOBSON, JJ., concur.

BARNS, J., dissents.

BARNS, J., dissenting:

In the lower court, complainants-appellees sought to enjoin defendants-appellants from completing an apartment house under construction on Lots 7 and 8 of Block 20, Section 1, of Miami Shores Village, and from using said building for apartment house purposes, by virtue of Sections 1, 2 and 3 of certain restrictive covenants contained in deeds to property of both complainants and defendants from common grantor, Bessemer Properties, Inc., hereinafter referred to as "Bessemer," and from completion and use of said building for apartment house purposes under a variance permit authorized by the Board of Adjustment, and issued by the Village Manager.

A zoning ordinance restricted this section for the construction of one-family residences, but provided machinery whereby variances would be allowed where a literal enforcement of the provisions of the ordinance would result in unnecessary hardships.

The pertinent Sections 1, 2 and 3 of the restrictive covenants provided for masonry constructed buildings, the plans for which should be approved by the grantor, limited to one residence building (for one family only) and one private garage, with further provision that no building should be used for business or commercial purposes, including the operation of hotels, apartment houses and tearooms.

A Special Master in Chancery was appointed to determine the equities, whether the restrictive covenants in question were for the benefit of all landowners within the area, or for the sole benefit of the grantor, and whether the ordinance was violated by the variance allowed in this instance. The Special Master found that the restrictive covenants, if enforceable at all, were personal to the grantor and enforceable by him only, not by the grantees, because of the lack of a general building scheme and consequent lack of mutuality, and that this was a valid variance, not in violation of said zoning ordinance.

This Court finds that the lower court acted erroneously in overruling the Special Master's report and in entering the final decree enjoining the use of the building for apartment house purposes.

It is a general rule of law that:

"Where the owner of a tract of land subdivides it, and sells distinct parcels to separate grantees, with restrictions on its use, pursuant to a general plan of development, such restrictions may be enforced by one grantee against any other grantee with notice."—26 C.J.S.—P. 548.

But here it appears that though Bessemer owned many lots in Section 1, Miami Shores Village, in which Block 20 lies, its lots were interspersed with lots owned by other companies. Bessemer did not obtain the lots it eventually owned in Section 1 at the same time; there was no tract or contiguous body of land for it to subdivide to impose the restrictive covenants in question. The lots owned by other development companies in Section 1 were sold with allegedly similar restrictive covenants contained in their deeds, but there is no showing that these were included pursuant to any general plan agreed to by and between the land companies. The lots owned by Bessemer were scattered throughout Section 1, not contiguous, and, as testimony established in the record, at least several of the lots sold by Bessemer have ultimately become sites for two-story garage apartments. In Osius v. Barton, 109 Fla. 566, 147 So. 862, this Court has said:

"But the right in equity of grantees from a common grantor to enforce, inter sese, covenants entered into by each with the grantor, or running with the land as emanating from the common grantor, is ordinarily confined to cases where the scheme of restriction contemplated by the deeds is universal or reciprocal, as the consideration for the obligation to observe the restrictions is the imposition of the same or kindred restrictions on other lots similarly situated. Klein v. Sisters of Charity of St. Elizabeth, 101 N.J. Eq. 761, 139 A. 174; Foreman v. Sadler's Ex'rs., 114 Md. 574, 80 A. 298; Trustees of Columbia College v. Thatcher, 87 N.Y. 311, 41 Am. Rep. 365; 18 C.J. 394, 395."

Relative to the zoning ordinance, the transcript discloses the Special master's findings of fact, the same facts which were considered by the Board of Adjustment when it granted the variance building permit:

"Lots 7 and 8 of Block 20, being the lots on which the building in question is constructed, are just across a very narrow alley from a block of business buildings or stores at the southwest corner of 96th Street and 2nd Avenue; these lots being on the south side of 96th Street and just west of the business buildings facing 2nd Avenue. One of the buildings is occupied by a drugstore which serves food; the garbage cans and packing cases of this drug store are immediately across the narrow alley of Lot 7, in block 20. Just south, in the same block of business buildings, facing northeast 2nd Avenue, there is a grocery store which handles perishable foods and maintains garbage cans in the rear, where they dispose of spoiled vegetables. All of the store buildings in the block facing 2nd Avenue, between 95th and 96th Streets, have rear entrances at which they receive deliveries of merchandise through the alley above mentioned, and large numbers of trucks use the alley for delivery purposes. Across the street from the lots in question is a building, which at the time of the hearings was used in part for offices and stores and in part for sleeping apartments or hotel rooms; a number of cars are regularly parked around the business buildings, and particularly along the south side of 96th Street by people who are going into the drug store or attending to other matters in that location. All of the blocks facing eastward on 2nd Avenue have lots running from east to west for a depth of 130 feet, which have been zoned for business purposes and on which are located business structures of one sort or another. None of the lots in the blocks in this immediate vicinity, just west of that portion of the blocks zoned for business, have been built on although the subdivision is now approximately twenty years old; that is to say, Lots 6 and 23 of Block 17, Lots 6 and 23 of Block 18, Lots 6 and 23 of Block 19, Lots 7 and 24 of Block 20, Lots 9 and 15 of Block 32, Lots 9 and 15 of Block 31, Lots 9 and 15 of Block 30, and Lots 9 and 16 of Block 29, have remained vacant . . ."

This Court has dealt before with the matter of variances. In State v. Danner, 33 So. (2nd) 45, 159 Fla. 874:

" . . . *Variance.* Experience has established that often after an over-all zoning ordinance has been enacted, it de-

velops that its application would result in practical difficulties and unnecessary hardships. To avoid this, such ordinances often provide for exceptions or departures from the general provision, when such prescribed standards for a variance have been established before the proper board or commission. This is often referred to as 'spot-zoning'."

In *"Zoning,"* by Bassett, on page 130, the author has this to say:

"A class of variances to which conditions are nearly always attached are those issued for buildings at or near boundaries of districts. In many cases this boundary will be between a business district and a residence district . . . Of course, the board of appeals will not allow every variance requested. Most border-line cases involve injury to adjoining residential buildings. A view of the premises by the board of appeals and the public hearing will usually disclose in what cases a variance on conditions will make the situation better instead of worse."

On page 122 of the same text, Mr. Bassett speaks concerning variances, related to uniformity:

" . . . Blanket resolutions by boards of appeal, stating what variances they will make, are always futile. The building inspector cannot base permits on such a resolution or on a prior variance. The legislative acts of a local legislature cannot be reviewed or adjusted by the courts. Within its jurisdiction such a body has equal standing with the courts and its acts are final . . . "

The chancellor erred in sustaining the exception to the Master's Report and in enjoining the use of the building for apartment house purposes and in restraining the use thereof to one family residential purposes only.

The decree appealed should be reversed.

PER CURIAM:

Petition for rehearing denied.

THOMAS, C. J., TERRELL, CHAPMAN, ADAMS, SEBRING, JJ., concur.

BARNS and HOBSON, JJ., concur with opinion.

ON PETITION FOR REHEARING—DENIED

BARNS, J.:

On November 5, 1942, appellants acquired two lots in Miami Shores and at the time this property was acquired it was limited to one-family residences, by Ordinance 92, Article 1, as adopted December 12, 1939.

On October 3, 1944, appellants applied for a permit to build an apartment house on the said premises. This permit was refused and, on the same date, appellants applied to the Board of Adjustments (hereafter called the Board) for a variance permit. On October 6, 1944, this appeal was heard and the Board unanimously agreed that the permit should issue.

The building was constructed but the use for other than one-family residential purposes was enjoined by final decree, which was appealed.

The question raised is whether the Board acted within the authority granted it.

In Tau Alpha Holding Corporation v. Board of Adjustments of Gainesville, 126 Fla. 858, 171 So. 819 (1937) it was held, under the facts of that case, that the power given to the Board to grant variances was not an unconstitutional delegation of legislative power, thus overcoming a major objection.

We have held that:

"*Zoning, generally.* Lawful zoning is the exercise of the police power and must be based upon and have substantial relation to either public health, safety, morals, comfort, convenience, or general welfare, and must not be unreasonably discriminatory.

"Zoning regulations usually must relate to the nature of the structure or the nature of the use. The purpose of regulations in respect to the quality of a structure will likely be quite different from the purpose of regulations respecting its use. The public purpose to be served in each instance will likely be different.

"A permit for the building of a structure would not of necessity be a permit determining the right to its use. Zoning

832

problems usually relate to nonconforming use of a non-conforming building, or both.

"*Non-conforming use or building.* A problem is created when an area is zoned and there is already within such area property being used in such a manner as not to conform to the zoning regulations. Usually such use is allowed to continue subject to certain conditions. This is done in an effort to secure a reasonable exercise of the police power for the interest of the community against the interest of private owner so as not to interfere with existing conditions more than necessary for the public welfare.

"*Variance.* Experience has established that often after an over-all zoning ordinance has been enacted, it develops that its application would result in practical difficulties and unnecessary hardships. To avoid this, such ordinances often provide for exceptions or departures from the general provision, when such *prescribed standards* for a variance have been established before the proper board or commission. This is often referred to as "spot-zoning."—State v. Danner, 159 Fla. 874, 33 So. (2nd) 45, 47.

The statutory law authorizing variance from a municipal zoning ordinance is as follows:

"176.08 Board of Adjustment

"The governing body of the said municipality may provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted pursuant to the authority of this chapter may provide that the said board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained."—Sec. 176.08, F.S. 1941, F.S.A.

The Board of Adjustment for Miami Shores as authorized by Ordinance 92, Article 14,[1] as set forth in appellants'

---

[1] Miami Shores Village Ordinance No. 92, Article XIV, provides:

That the Planning Board of Miami Shores Village shall, from and after the passage of this Ordinance, be and it is hereby declared a Board of Adjustment so that where there are practical difficulties of unnecessary hardships in the way of carrying out the strict letter of the pro-

answer, adopted in pursuance of Chapter 176, F.S. 1941, F.S.A., provides in part:

" . . . so that where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of the ordinance, the Board of Adjustments shall have power in specific cases, after due notice, and investigation, to determine and vary such provisions in harmony with the general purpose and intent of the zoning ordinance."

Section 176.13, F.S. 1941, F.S.A., provides:

"The board of adjustment shall fix a reasonable time for the hearing of the appeal, give *public notice thereof, as well as due notice to the parties in interest,* and decide the same within a reasonable time . . . "

In comparing the ordinance with the general law, it is apparent that the notice required by the ordinance is insufficient to meet the requirements prescribed by Section 176.13, supra. An ordinance adopted under statutory authority should follow the statute. There has been no effectual hearing before the Board.

---

visions of this Ordinance, the Board of Adjustment shall have power in specific cases, after due notice, and investigation to determine and vary such provisions in harmony with the general purpose and intent of the Zoning Ordinance so that public health, safety and general welfare may be secure and substantial justice done and the said Board may among other matters:

(a) Hear and decide appeals from any order, requirements, decision or determination of an administrative officer in the enforcement of this Ordinance.

(b) Hear and decide special exceptions to the terms of this Ordinance and the authority of which is conferred upon said Board of Adjustment by this Ordinance.

(c) Authorize upon appeal, in specific cases, such variances as will not be contrary to the public interest, when, owing to special conditions, a literal enforcement of the provisions of this Ordinance will result in unnecessary hardships, and so that the spirit of this Ordinance shall be observed and substantial justice done.

(d) That nothing in this article, or in this Ordinance shall in any wise take from nor deprive the Planning Board of Miami Shores Village of authority, duties, responsibilities and jurisdiction as the same has been constituted, maintained and operated prior to the adoption of this Ordinance, the powers, duties and jurisdiction granted in this article and this Ordinance to the Planning Board being supplementary to and cumulative of functions thereof heretofore exercised by said Board.

In this case, there was *no* notice of any kind given and about the only point on which the Board met the requirements of the statute was in deciding the appeal within a reasonable time.

168 A.L.R. 13 contains an elaborate annotation on "Zoning" and at page 107 thereof will be found a brief discussion of the requirement of notice on appeals before the Board. Statutes concerned with notice should be substantially complied with.

The decree appealed is affirmed and petition for rehearing is denied.

HOBSON, J., concurs.