93 So.2d 591 (1957)
Fred WELKER, Appellant,
v.
The STATE of Florida, and the taxpayers property owners and citizens of Fort Lauderdale, including nonresidents owning property or subject to taxation therein; City of Fort Lauderdale, a municipal corporation of Florida; Enseller Corporation, a Florida corporation; Walter C. Peak; Lillian G.H. Peak; Charellen corporation, a Florida corporation; and Della C. Hendricks, all taxpayers and property owners in the City of Fort Lauderdale, Florida, et al., Appellees.
Supreme Court of Florida, Division A.
March 13, 1957.
*592 Crim & Barrs, Fort Lauderdale, for Fred Welker.
W.J. Kelley, E.L. Heinrich and McCune, Hiaasen, Kelley & Crum, Fort Lauderdale, for Enseller Corp., Walter C. Peak, Lillian G.H. Peak, Charellen Corp., and Della C. Hendricks, appellants.
Julian E. Ross, Fort Lauderdale, for appellee.
THORNAL, Justice.
Appellant Welker, as a taxpayer, seeks reversal of a decree of the Circuit Court validating an issue of excise tax improvement bonds.
The points raised which assault the validity of the bonds will be discussed hereafter.
*593 The City of Fort Lauderdale proposes to issue $3,000,000 of excise tax improvement bonds for the construction of the following facilities, towit: (1) an off-street parking lot, (2) a police station, (3) a bridge across New River at Third Avenue, and (4) a bridge across the Intra-Coastal Waterway and another across Middle River at Sunrise Boulevard.
The income to be used to liquidate the indebtedness is from the following sources, towit: (a) the proceeds of the cigarette tax levied by the City pursuant to Chapter 210, Florida Statutes, F.S.A., to the extent of $2,325,000, excluding from this pledge the cost of constructing the parking lot, (b) the proceeds of a franchise tax collected from Florida Power and Light Company under its franchise from the City, and (c) to the extent available, the proceeds of a municipal utility tax which is subject to a pledge to pay three other bond issues.
At the hearing for validation of the bonds appellant and others, as taxpayers and property owners, registered their objections by their answers. After an extensive hearing at which considerable testimony was offered on all sides, the Circuit Judge entered a decree validating the bonds. Reversal of this decree is here sought.
The contentions of the parties on appeal are reflected by our discussion herewith. We point out that both the bond resolution and the decree of the Circuit Judge preclude any pledge or enforced exercise of the ad valorem taxing power of the City.
The appellant taxpayer assaults the bond issue on the broad ground that by obligating excise taxes, the municipality is indirectly placing an additional tax burden on the ad valorem taxpayers. It is the view of appellant that if these excise taxes were not pledged to the bond issue they would be used for general operations in lieu of ad valorem levies. Hence, he claims that the freeholders should have an opportunity to express their sentiments on the bond proposal as a condition to the valid issuance of the bonds.
We have many times held that the requirements of Section 6, Article IX of the Florida Constitution, F.S.A., with reference to a freeholders election as a condition precedent to the issuance of bonds applies to bonds obligating the ad valorem taxing power of the governmental unit involved. As we shall see, we have also many times held that a pledge of excise tax income with a simultaneous prohibition against an ad valorem levy does not necessitate a precedent expression of the freeholders of the issuing authority. While the appellant offers strong and persuasive arguments to support his position on this point, we are compelled to point out that while the courts of some other states might agree with him, our own precedents are consistently contrary to his position.
Appellant next makes the point that the City of Fort Lauderdale is without authority to pledge the income from the cigarette tax levy, the franchise tax and the utilities tax to support the bond issue, the proceeds of which are to be used for the purposes stated above. Again we must point out that the decisions of this Court are consistently contrary to the position which appellant now wishes us to take. The authority of a municipality to pledge cigarette tax income derived pursuant to Chapter 210, Florida Statutes, F.S.A., in support of an issue of securities for improvements within the authority of the governing statute was clearly recognized in State v. City of Coral Gables, Fla. 1954, 72 So.2d 48; and State v. City of Auburndale, Fla. 1956, 85 So.2d 611. We recognized the authority of a municipality to pledge utilities taxes as security for revenue bond issues in State v. City of Miami, Fla. 1953, 62 So.2d 405. We recognized the authority of a municipality to pledge utility franchise tax income in State v. City of Pompano Beach, Fla. 1950, 47 So.2d 515. We could cite many other cases to support the conclusions reached by the authorities last mentioned. They are *594 so numerous, however, that it would unduly burden this opinion to do so.
Next, appellant contends that although the bond resolution purports to limit the pledge of the cigarette tax to the improvements other than the parking lot, that nevertheless it has the effect of pledging cigarette tax income to support the entire bond issue, a part of the proceeds of which will be used to construct the parking lot. He claims that a municipal parking lot cannot be financed with cigarette tax income. This problem causes us very little concern. Actually, the bond resolution excludes the cigarette tax income as a supporting base for that portion of the bonds which will be used to finance the parking lot. Even if it did not, we would have no difficulty in concluding that the construction of an off-street parking facility is within the authorized uses of cigarette tax income as provided by Section 210.03, Florida Statutes, F.S.A. In the cited statute municipalities are authorized to use cigarette tax income for numerous purposes. Among these are: "* * * the exercise of controls for public safety, * * * and municipal ordinances with respect to public travel, health and safety, * * *". We have heretofore approved the construction and maintenance of municipal off-street parking facilities as an aid to travel by eliminating congestion and hazards to life and property through the removal of parked automobiles from the public way. Certainly it requires no stretch of the English language to conclude from the authority granted by Section 210.03, supra, that the construction of an off-street parking facility is directly related to the preservation of the public safety and the protection of the traveling public. If further support for this conclusion is needed, a brief reference to Chapter 183, Florida Statutes, F.S.A., dealing with municipal parking facilities would adequately buttress our position. It is there expressly stated that the free circulation of traffic through the streets of the cities of the state is an essential to the health, safety and general welfare of the public whether it be those who reside in the municipality or those who merely travel through the city.
Appellant makes a further point that the two bridges at Sunrise Boulevard will be constructed on a part of a state highway running through the city and will be competitive with two existing toll bridges in violation of the contract rights of the holders of the toll bridge bonds. We disposed of this argument adversely to appellant's contention in Gibbs v. Florida State Turnpike Authority, Fla. 1957, 91 So.2d 813. However, the record here shows that aside from the rule of law announced in the last cited case, the so-called existing "toll bridges" are in actuality not toll bridges as such. Travelers over the bridges do not pay a toll. The supporting income which is employed to liquidate those bridge bonds, commonly known as "causeway revenue debentures", is the amount which the municipality derives periodically from the State Road Department through the commonly accepted lease-purchase arrangement now in existence between the Road Department and many other local governmental agencies. Moreover no causeway debenture holder is here complaining even if there were merit to the point and we hold there is none.
Finally, appellant contends that the municipality is using the proceeds of the bonds to improve a state highway, inasmuch as Sunrise Boulevard has been designated as a "municipal connecting link road" in the state highway system. We judicially know that many municipal streets in Florida constitute component parts of the state highway system to the extent that traffic entering the city on a state highway is channeled through the municipality in connecting state highways at other points on the municipal limits. It may be that this boulevard is a part of the state highway system. It is, however, at the same time, according to this record, an essential artery of travel serving the people of the municipality. As to whether muncipal funds should be expended for this particular improvement in *595 the interest of the people of the city is a matter of local concern to be settled by the city officials in their wisdom. It is not a diversion of municipal funds to a nonmunicipal purpose. It is not a problem for this Court to resolve.
In the ultimate we find that the proposed bond issue is well within the rules laid down by numerous precedents heretofore established by this Court. This being so, the decree of the Circuit Judge validating the bonds is hereby 
Affirmed.
TERRELL, C.J., DREW, J., and ROWE, Associate Justice, concur.