ERVIN, Judge.
B & B Advertising Company appeals a judgment granting the Florida Department of Transportation’s (hereafter referred to as DOT) application for mandatory injunction forcing removal of B & B’s outdoor sign and denying compensation for its removal. We find the appellant’s constitutional arguments without merit but reverse as to that portion of the judgment denying B & B compensation for removal of the sign.
In 1965, the United States Congress enacted the Highway Beautification Act as part of Title XXIII, United States Code. To further the national policy relating to control of outdoor advertising along interstate and primary federal aid highways, Section 131(d) authorized the Secretary of Transportation to enter into agreements with the several states to determine the size, lighting, and spacing of signs, consistent with customary use and the intent of the Highway Beautification Act of 1965. Section 479.02, Florida Statutes (1971), authorized the governor to execute an agreement with the appropriate agents of the United States to carry out the purposes of the Highway Beautification Act. Such an agreement was entered into by the State of Florida, through its governor, and the United States by the Secretary of the Department of Transportation on January 27, 1972. The agreement applies to' all commercial and industrial areas within 660 feet of the right of way of all interstate and federal aid primary systems within the state. Section III.B. provides in part that no highway signs shall be placed within 1,000 feet of each other.
*757 Prior to December,- 1971, B & B paid $7,000.00 for a small piece of property in Duval County at the intersection of Interstates 10 and 95. A billboard, 45 feet long and 14 feet high, was erected in May, 1972 within 168 feet of an existing sign. In August, 1972, DOT sought a mandatory injunction against B & B alleging the sign violated the spacing regulations of the agreement as well as Section 479.02.
B & B first argues the agreement is an unlawful delegation of authority from the legislature to the executive branch. We find, however, DOT had ample enforcement powers under Section 479.02 aside from the agreement. That section, originally enacted by Chapter 71-971, Laws of Florida, effective December 8, 1971, provides:
“Enforcement of provisions by department.—It shall be the function and duty of the department to administer and enforce the provisions of this chapter: including, but not limited to, executing agreements in conjunction with the governor in accordance with title I of the Highway Beautification Act of 1965, and title 23, U.S.Code, to regulate size, lighting, and spacing of signs permitted in the zoned and unzoned commercial and zoned and unzoned industrial areas and to determine unzoned commercial and industrial areas, and to regulate signs relating to food, lodging, camping, vehicle service and attractions subject to the following:
(1) Size shall not exceed 1,200 square feet.
(2) Spacing shall be 1,000 feet on interstate and 500 feet on primary on the same side of the highway facing the same direction.
(3)Lighting—subject to agreement established by section 479.02, Florida Statutes.” (Emphasis supplied.)
Had all the provisions of the above statute been in force when the sign was erected in May, 1972, B & B would clearly have been on notice of the spacing requirements of Section 479.02. However, Section 479.02 was amended, effective April 21, 1972, by Chapter 72-274, Laws of Florida, as follows:
“Enforcement of provisions by department.—It shall be the function and duty of the department to administer and enforce the provisions of this chapter including, but not limited to, executing agreements in conjunction with the governor in accordance with title I of the Highway Beautification Act of 1965, and title 23, U.S.Code, to regulate size, lighting, and spacing of signs permitted in the zoned and unzoned commercial and zoned and unzoned industrial areas and to determine unzoned commercial and industrial areas, and to regulate signs relating to food, lodging, camping, vehicle service and attractions subject to current federal regulations.” (Emphasis in original.)
The dispositive question concerning the constitutionality of 479.02[1] for purposes of this appeal is whether the phrase “subject to current federal regulations” passes muster. It is obvious the legislature may adopt provisions of federal statutes and administrative rules made by a federal administrative body “ . . . that are in existence and in effect at the time the legisla *758 ture acts, but it would be an unconstitutional delegation of legislative power for the legislature to adopt in advance any federal act or the ruling of any federal administrative body that Congress or such administrative body might see fit to adopt in the future.” Florida Industrial Commission v. State, 155 Fla. 772, 21 So.2d 599 (1945). See also Freimuth v. State, 272 So.2d 473 (Fla.1972); State v. Camil, 279 So.2d 832 (Fla.1973). A 1,000 foot spacing requirement was part of federal regulations when Chapter 72-274 became effective in April, 1972. 23 C.F.R. section 20.7(b)(2), effective January 1, 1972.
Since the spacing regulation was in effect and properly incorporated into Florida law by Chapter 72-274 at the time the billboard was erected by B & B the trial court was correct in finding a violation of § 479.02. Therefore B & B Advertising’s attack on the agreement of January 27, 1972 is without merit.[2] DOT has sufficient authority not only to enforce the agreement but also to enforce the remaining provisions of Section 479.02.
B & B also argues the statute draws an invalid distinction between interstate and federal highways on one hand and all other highways on the other, and creates an invalid distinction between signs placed on premises and off premises.
These arguments may be summarily dealt with since B & B lacks standing to challenge the validity of the statute’s sections it is not specifically charged with violating. It is only affected by the spacing regulation set down by § 479.02 and 23 C.F.R. section 20.7(b)(2). Compare Hodges v. Buckeye Cellulose Corp., 174 So.2d 565 (Fla. 1st DCA 1965); Lykes Brothers, Inc. v. Board of Commissioners of Everglades Drainage District, 41 So.2d 898 (Fla.1949), holding that before a person will be heard to question the constitutionality of an act, he must show his personal or property rights are injuriously affected by such statute.
Even assuming B & B has established standing, we note that statutes regulating outdoor advertising have almost universally been upheld against similar constitutional attacks that they constitute an invalid classification. E. g., Markham Advertising Company v. State, 73 Wash.2d 405, 439 P.2d 248 (1968); National Advertising Company v. State Highway Department, 230 Ga. 119, 195 S.E.2d 895 (1973); E. B. Elliott Advertising Company v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir. 1970); Boozer v. Miami, 193 So.2d 449 (Fla. 3rd DCA 1967).
Finally, we hold, after examining the pertinent statutory provisions, that B & B is entitled to compensation for the removal of its sign. DOT contends the trial court was correct in ordering the removal of the sign at B & B’s expense, and quotes the first sentence of Section 479.24(1), for support: “Compensation shall be paid upon the removal of all signs lawfully in existence on December 8, 1971 or signs lawfully erected which later become nonconforming.” (Emphasis supplied.) However, DOT’s argument ignores the plain meaning of the remainder of that first section:
‘Compensation for any sign erected or completed after December 8, 1971, shall be limited to the actual replacement value of the materials in such sign. It is the legislative intent that any person erecting or completing such a sign after December 8, 1971, shall be fully compensated by the method herein provided.” (Emphasis supplied.)
Subsection (1) is ambiguous as to when compensation should be paid to billboard owners. The absolute destruction of property is an extreme exercise of the police power and is justified only within the narrow limits of actual necessity, unless the state chooses to pay compensation. Corneal v. State Plant Board, 95 So.2d 1, 4 (Fla.1957). Because of the legislative intent in Section 479.24(1) that compensation be paid *759 and because of the ambiguous language in that subsection, we construe Chapter 479 to require compensation for the actual replacement value of the materials.
We therefore affirm the trial judge’s summary final judgment in all respects except as to the compensation due. We remand for consideration of the cost of such materials.
Affirmed in part and reversed in part.
BOYER, C. J., and MILLS, J., concur.

. Section 479.02, as it now appears in Florida Statutes, has been reworked by the editors with some resulting confusion:
“479.02 Enforcement of provisions by department.—It shall be the function and duty of the department to:
(1) Administer and enforce the provisions of this chapter including, but not limited to, executing agreements in conjunction with the governor in accordance with Title I of the Highway Beautification Act of 1965 and Title 23, U. S. Code;
(2)' Regulate size, lighting, and spacing of signs permitted in the zoned and unzoned commercial and zoned and unzoned industrial areas;
(3) Determine unzoned commercial and industrial areas; and
(4) Regulate signs relating to food, lodging, camping, vehicle service, and attractions, subject to current federal regulations.”
By separating the text of 72-274 into four separate paragraphs, the phrase “subject to current federal regulations” no longer appears to modify the entire section, as originally enacted and applicable to all proceedings before us.

. In different fact situations, other state statutes implementing the Highway Beautification Act have been held a valid delegation of legislative authority. See Yarbrough v. Arkansas State Highway Commission,539 S.W.2d 419 (Ark.1976); Wes Outdoor Advertising Company v. Goldberg, 55 N.J. 347, 262 A.2d 199 (1970).