390 So.2d 159 (1980)
HENDERSON SIGN SERVICE, Appellant,
v.
DEPARTMENT OF TRANSPORTATION, State of Florida, Appellee.
ARROWHEAD CAMPSITES, Appellant,
v.
DEPARTMENT OF TRANSPORTATION, State of Florida, Appellee.
Nos. NN-112, NN-113.
District Court of Appeal of Florida, First District.
November 19, 1980.
James P. Appleman, Marianna, for appellants.
H. Reynolds Sampson and Margaret-Ray Kemper, Tallahassee, for appellee.
*160 PER CURIAM.
In these consolidated appeals Henderson Sign Service and Arrowhead Campsites appeal from Department of Transportation orders adopting the proposed order of a hearing officer finding that appellants' signs adjacent to an interstate highway are in violation of Section 479.17, Florida Statutes (1977).
The evidence as to the location of all three signs was essentially the same: All were well within the area prohibited by the 600-foot setback provisions of Section 479.11, Florida Statutes (1977), and none displayed permit tags. Appellants offered no evidence. They now argue the Department did not establish by substantial and competent evidence that the signs were outside or within an incorporated city or town;[1] that the signs were in fact signs as defined by Chapter 479. We reject these contentions. The structures were clearly visible as signs from the highway by DOT's outdoor advertising inspector. While the Department offered no specific proof that Interstate 10 had been designated as part of the national system of interstate and defense highways by the Department of Transportation,[2] we conclude that we may take judicial notice that Interstate 10 was and is part of the federal highway system. The highway adjacent to the signs was referred to by the Department's witness as Interstate 10. Matters relating to transportation and roads have been judicially noticed on numerous occasions. E.g., State Road Department v. Lewis, 170 So.2d 817 (Fla. 1964); Welker v. State, 93 So.2d 591 (Fla. 1957). Moreover, the burden of proving entitlement to any exceptions of the chapter's advertising requirements is upon appellants, not the Department. Walker v. State, Dept. of Transp., 352 So.2d 126, 127 (Fla. 1st DCA 1977).
Appellants' primary contention is that since the Department failed to establish the date of the erection of the signs,[3] or the date when the Department designated the highway as part of the national system of interstate and defense highways, one could conclude that the signs were lawfully erected or were lawfully in existence prior to the official designation of the highway as an interstate highway. And in the absence of such proof, they argue, there is no authority for the Department to remove nonconforming signs until the end of the fifth year after they have become nonconforming, relying upon Section 479.23, Florida Statutes (1977). The problem with appellants' argument is that none of the signs displayed the permit tag required by Section 479.07(1), and appellants offered no explanation for their failure to affix a tag upon their signs. Section 479.07(4) states:
The construction, erection, use or maintenance of any advertising structure, advertising sign or advertisement which is required by this chapter to be permitted, without having affixed thereto a currently valid permanent permit tag shall be prima facie evidence that the same has been constructed or erected and is being operated, used or maintained in violation of the provisions of this chapter, and shall be subject to removal by legal representation of the department.
The effect of a statute which declares that certain facts shall constitute prima facie evidence of other facts is to relieve the party in whose favor they operate of the necessity of producing evidence on the issue, and to cast on the other party the burden of going forward with the evidence. Leonetti v. Boone, 74 So.2d 551 (Fla. 1954). *161 When the Department presented evidence showing that no permit tags were affixed to the signs, a statutory presumption arose that the signs were illegally erected, which remained until the signowners presented testimony to rebut the presumption. None was presented. The Department established its case.
Alternatively the signowners contend that if their signs are found to be illegally erected and maintained, and therefore subject to removal, compensation must nevertheless be paid for the actual replacement value of the materials in those signs pursuant to Section 479.24(1), which provides:
(1) Compensation shall be paid upon the removal of all signs lawfully in existence on December 8, 1971 or signs lawfully erected which later become nonconforming. Compensation for any sign erected or completed after December 8, 1971 shall be limited to the actual replacement value of the materials in such signs. It is the legislative intent that any person erecting or completing such a sign after December 8, 1971 shall be fully compensated by the method herein provided.
Construing Section 479.24(1), this court in Brazil v. Div. of Admin., Dept. of Transportation, 347 So.2d 755 (Fla. 1st DCA 1977), ordered a signowner compensated for the replacement value of materials in his sign which was found to have been erected and maintained adjacent to an interstate highway in violation of the spacing requirements of Chapter 479. The District Court of Appeal, Fourth District, placed a different interpretation of Section 479.24(1) in LaPointe Outdoor Advertising v. Florida Dept. of Transportation, 382 So.2d 1347 (Fla. 4th DCA 1980), and the Supreme Court recently granted certiorari to resolve the conflict.
As appears from his separate opinion in this case, Judge Ervin would recede from Brazil and deny compensation to the appellant signowners whose signs are now subject to removal. Judges Booth and Robert Smith, for different reasons, choose not to reach the question of compensation. Judge Booth considers that because appellant has not yet raised the question of compensation before the agency we should not reach that question now. While Judge Robert Smith conceives that any legal question inhering in the case and raised in this court can and ordinarily should be decided, if it can fairly be decided on the existing record, Rice v. Dept. of Health and Rehab. Services, 386 So.2d 844, 850 (Fla. 1st DCA 1980), he thinks it undesirable for a panel of this court to reconsider a prior decision of this court, perhaps leading to en banc proceedings, when the jurisdiction of the Supreme Court has attached because of that prior decision and that Court may reasonably be expected soon to make the law uniform on an important subject.
For the reasons stated, then, we decline to consider appellants' claims for compensation based on Brazil and Section 479.24(1), and in affirming the Department's order for removal of appellants' offending signs we remit the question of compensation to the Department to abide the Supreme Court's decision in LaPointe.
AFFIRMED.
ROBERT P. SMITH, Jr., J., concurs.
BOOTH, J., specially concurs, with opinion.
ERVIN, J., concurs and dissents, with opinion.
BOOTH, Judge, specially concurring:
The issue before us is the sufficiency of the evidence to establish that the signs in question violated Florida Statutes Chapter 479. The Department adduced evidence that the signs were subject to the requirements of Chapter 479 and that those requirements were not complied with. This prima facie case was not refuted by the sign owners. I agree, therefore, that the order below be affirmed.
On appeal to this court, appellant also raises claims for compensation for signs removed, an issue neither raised nor litigated below. For its part, appellee asks this court to recede from Brazil v. DOT, 347 So.2d 755 *162 (Fla. 1st DCA 1977), on the ground that that case allows compensation for illegal signs. This court should not rule on issues not litigated below, and the Brazil case, being correctly decided on its facts, should not be overruled.
In Brazil, the sign owner made substantial expenditures toward the erection of a sign at a particular intersection in an industrial/commercial area prior to December, 1971. Thereafter, further expenditures and completion of the sign, save for the on-site erection occurred, all prior to the effective date in January of 1972 of spacing requirements applicable to the area. Under these circumstances, this court ruled that summary judgment should not have been entered against the sign owner on his cross-claim for compensation and that compensation for the value of the materials used in the sign was required under Florida Statutes § 479.24, which provides:
Compensation shall be paid upon the removal of all signs lawfully in existence on December 8, 1971 or signs lawfully erected which later become nonconforming. Compensation for any sign erected or completed after December 8, 1971 shall be limited to the actual replacement value of the materials in such sign. It is the legislative intent that any person erecting or completing such a sign after December 8, 1971 shall be fully compensated by the method herein provided.
The sign owner in Brazil recovered no compensation for labor cost or value of the structure as erected. The limited compensation provided was allowed on destruction of a sign which had been substantially completed and was lawfully in existence prior to the effective date of the restrictions. The case is not, as contended by appellee, a financial inducement to build illegal signs.
In LaPointe Outdoor Advertising v. DOT, 382 So.2d 1347 (Fla. 4th DCA, April 30, 1980), the court denied compensation to a company that began construction of a sign in July of 1976, some four years after adoption of State spacing requirements; was denied a State permit for erection of the sign in September of 1976; and erected its sign in violation of both spacing and permitting requirements. The court in LaPointe recognized the distinction between LaPointe and Brazil, that "LaPointe's sign was never `lawfully in existence ...'"[1]
I concur in the affirmance of the orders below.
ERVIN, Judge, concurring and dissenting.
I concur with that portion of the majority's opinion affirming the Department's orders finding appellant's signs adjacent to an interstate highway were in violation of the setback provisions of Chapter 479. I now feel, however, that Brazil v. Div. of Admin., State Dept. of Transportation, 347 So.2d 755 (Fla. 1st DCA 1977), permitting compensation to a signowner for the replacement value of materials in a sign which was illegally erected and maintained nearby an interstate highway in violation of the spacing requirements of Chapter 479, was incorrectly decided and that the decision of the Fourth District in LaPointe Outdoor Advertising v. Fla. Dept. of Transp., 382 So.2d 1347 (Fla. 4th DCA 1980) represents the better view.
In Brazil, we construed Section 479.24(1) as allowing compensation for the materials in a sign illegally erected near an interstate highway after December 8, 1971. There we stated that the first sentence of Section 479.24(1) provides compensation only for signs lawfully erected before December 8, 1971, or for signs lawfully erected thereafter "which later became nonconforming," *163 but we found "plain meaning" supporting the signowner's position in the last two sentences of subsection (1). Finding in Section 479.24(1) an ambiguity, we resolved it in favor of compensating the signowner for the value of materials in a sign illegally erected in May, 1972.[1]
On further considering the text of the 1971 amendment to Chapter 479, its evident purpose, and its legislative history, I conclude, as did the Fourth District in LaPointe, that Section 479.24(1) provides no compensation for the forced removal of signs erected after December 8, 1971, in violation of the setback or spacing restrictions of the Highway Beautification Act and its implementing Florida legislation. Instead, it is my view that Section 479.24(1) allows payment for the removal of nonconforming signs only, as the term nonconforming is understood within the context of zoning and land use regulations which permits, for example, a use which was in existence before the passage of a zoning ordinance to continue thereafter, subject to certain conditions, as a means of accommodating a reasonable balance between the interests of the community and those of the private owner. See State ex rel. S.A. Lynch Corp. v. Danner, 159 Fla. 874, 33 So.2d 45, 47 (1947).
By applying the same construction to the word nonconforming as provided in Section 479.24(1), I consider that the statute provides full compensation, awardable in eminent domain proceedings, for the removal of any sign which was lawfully erected near an interstate highway before July 1, 1971, and it awards full compensation "limited to the actual replacement value of the materials in such sign" in two instances: (1) The forced removal of a sign "erected or completed after December 8, 1971" near a county or state highway which later became nonconforming to the implementing legislation by the construction of a nearby interstate highway, and (2) the forced removal of a sign erected between July 1, 1971 and the effective date of the Act, December 8, 1971. But, the statute allows no compensation for the forced removal of a sign illegally erected or maintained. This construction of Section 479.24(1) is supported by the legislative history of the 1971 Act and leaves no room for any inference that the legislature intended the Brazil result.
When legislation was first proposed authorizing compensation to owners of signs forcibly removed, H.B. 2522 (introduced at the 1971 regular session on May 31, 1971) contained the same language as does the first sentence which ultimately was enacted as Section 479.24(1): "Compensation shall be paid upon the removal of all signs lawfully in existence at the time of this act or signs lawfully erected which later become nonconforming." (The remaining two sentences presently comprising subsection (1) were not offered until the special session of November and December, 1971.) H.B. 2522 also proposed, as is now provided in 479.24(2), that "compensation shall be made pursuant to the state's eminent domain procedures, ... ." H.B. 2522 thus proposed full compensation to be paid following condemnation proceedings to owners of signs which were either lawfully in existence as of the Act's effective date, or lawfully erected thereafter and which became nonconforming due to the later construction of a nearby interstate highway.
H.B. 2522 and its companion, S.B. 1577, were not enacted due to the legislature's adjournment without final action on either bill.
The above legislation was reintroduced at the special session convening June 1, 1971 *164 and adjourning, June 24, 1971, by H.B. 27-C and S.B. 44-C. The House bill had a proposed effective date of July 1, 1971. In addition to containing the language previously quoted in H.B. 2522, H.B. 27-C proposed adding Section 479.25 to read: "All nonconforming outdoor signs erected after the effective date of this act shall be erected at the owners [sic] peril and said owner shall bear the costs of removal." This language no doubt was designed to clarify the legislative intent that only owners of signs which became legally nonconforming to the implementing legislation were entitled to compensation-not owners of signs which were illegally erected following the Act's enactment.
H.B. 27-C passed the House during the June session, but the proposed legislation again died because the Senate adjourned without acting on it.
At the special legislative session of November and December of 1971, H.B. 7-D, and its committee substitute, preserved the same language as was proposed in former House bills 2522 and 27-C, which was finally enacted into law as the first sentence to Section 479.24(1). The language specifically denying compensation to owners of illegally nonconforming signs was not, however, retained. Its absence, nonetheless, compels no inference that the legislature intended to compensate owners who had illegally erected signs. The first sentence to proposed 479.24(1), as stated, remained intact and clearly expressed an intent to compensate only persons whose signs were lawfully in existence at the time of the Act, or whose signs became lawfully nonconforming thereafter. Had that one sentence only comprised subsection (1), following the Act's passage, there would have been no cause for Brazil to hold that its compensation provisions permitted an inference that an owner of a sign illegally erected was, upon its removal, entitled to indemnification. The erroneous construction given the statute by Brazil resulted from a misunderstanding of the legislative purpose in amending the subsection by adding to it two sentences. That purpose, as the following sequence of events reveals, was simply to establish a method for compensating owners who had lawfully erected or maintained signs during certain designated periods of time.
On December 3, 1971, Representatives MacKay, Stephens and Spicola offered, and the House adopted, a floor amendment to the committee substitute, adding subsection (5) to Section 479.24, which permitted, as it does now, compensation to signowners for the replacement value[2] of signs erected after July 1, 1971,[3] it being presumed that a person who erected a sign following such date did so "with the knowledge of the ... pendency of this legislation." Immediately following the adoption by the House of the amendment, the same three representatives who had offered it then proposed adding to subsection (1) the two sentences which Brazil construed as requiring compensation to be paid upon the removal of an illegal sign:
(1) Compensation shall be paid upon the removal of all signs lawfully in existence at the time of this act or signs lawfully erected which later become nonconforming. Compensation for any sign erected or completed after the effective date of this act shall be limited to the actual replacement value of the materials in such sign. It is the legislative intent that any person erecting or completing such a sign after the effective date of this act shall be fully compensated by the method herein provided.

The House adopted this amendment and C.S. for H.B. 7-D was passed containing Section 479.24(1). The Senate also passed C.S. for H.B. 7-D, which became effective as Chapter 71-971, Section 9, Florida Laws, *165 on December 8, 1971. That date was inserted in Florida Statutes 1973 by revision in lieu of the bill's references to the "effective date of this act" in Section 479.24(1).
Given the above history, I am convinced that the intent behind the floor amendment to subsection (1) was to place signs which might be lawfully erected after December 8, 1971 in the same compensable category as those signs which had been erected after July 1, 1971, but to allow full compensation without restriction upon removal of signs lawfully erected before July 1, 1971. Therefore the words in the second sentence to subsection (1), limiting "compensation for any sign erected or completed after the effective date of this act ... to the actual replacement value of the materials in such sign ..." (e.s.), must be, as LaPointe found, modified by the provisions of the first sentence, thereby restricting compensation by that method upon the removal of signs "lawfully erected" after December 8, 1971, "which later became [lawfully] nonconforming" due to the construction of a nearby interstate highway.
This is the only reasonable interpretation which I consider can be given the statute. The construction placed upon it by Brazil can only lead to an emasculation of the Department's efforts to enforce the Act, since Brazil permits a signowner to erect a sign in violation of Chapter 479 with the knowledge that once it is removed he may receive compensation for the replacement value of the materials in the sign. Such a result must be condemned as unreasonable. It should be presumed that the legislature intended to enact an effective law. Continued adherence to the Brazil rule would render inefficacious for all practical purposes the Department's enforcement powers over outdoor advertisements erected near interstate highways. I would therefore expressly recede from that language in Brazil which allows compensation to signowners for signs illegally erected near interstate highways after December 8, 1971.
NOTES
[1] Section 479.16(12) excepts signs from the provisions of Ch. 479 which are within the corporate limits of cities or towns, and adjacent to highways other than interstate and federal-aid primary systems.
[2] Section 479.01(13) defines interstate highway as "any highway officially designated as part of the national system of interstate ... highways by the Department of Transportation and approved by the appropriate authority of the Federal Government."
[3] If the sign was lawfully in existence prior to the effective date of December 8, 1971, it thereafter became nonconforming and not subject to removal until after the fifth year from its nonconformity and then only upon the payment of compensation. Sections 479.23 and .24.
[1] LaPointe Outdoor Advertising v. DOT, 382 So.2d 1347 (Fla. 4th DCA, April 30, 1980):

Brazil did not discuss the `lawfully in existence' language ... and instead emphasized the second sentence, limiting compensation for signs erected after December 8, 1971 to the actual replacement value of the materials. We decline to follow this portion of Brazil. Compensation for removal of a sign erected in violation of the law essentially condones the initial unlawful act and totally ignores the first sentence of Section 479.24(1), F.S. (1977). Because LaPointe's sign was never `lawfully in existence,' the Department correctly denied compensation.
[1] I disagree with the special concurring opinion that the facts in Brazil are distinguishable from those in LaPointe, thus justifying compensation to the signowner in the former, while validly denying it in the latter. In Brazil, the sign was erected in May, 1972 in violation of the spacing restrictions of Chapter 479; therefore it should not, for the reasons stated infra, have been considered one which was lawfully nonconforming. The effect of Brazil was correctly stated by Judge Booth's majority opinion in Walker v. State, Dept. of Transp., 366 So.2d 96, 97, n. 4 (Fla. 1st DCA 1979), as "holding owner of sign erected after December 8, 1971, ... was entitled, ... to compensation based on the actual value of the materials in the sign, ... ." (e.s.)
[2] Fla. H.R. Jour. 12/3/71, special session, p. 37. Subsection 479.24(5), as originally proposed by Representatives MacKay, Stephens and Spicola, limited compensation to the "depreciated value of the materials," but Representative Harris's amendment to the amendment was adopted, changing "depreciated" to "replacement."
[3] The reference to July 1, 1971 was to the proposed effective date of H.B. 27-C, previously introduced at the June special session.